UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL L. BYRD, JR.,<br><br>                    Plaintiff,<br><br>          v.<br><br>U.S. PAROLE COMMISSION, et al.,<br><br>                    Defendants.<br>//////////////////////////////////////////////// | )<br>)<br>)<br>)<br>)  Civil Action No.07-0332 RMC<br>)<br>)<br>)<br>) |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION PURSUANT TO FED.R.CIV.P. RULE 23

### Preliminary Statement

Comes now, Samuel L. Byrd ("Plaintiff"), and respectfully moves this Honorable Court for certification of this action as a Class Action, pursuant to Rule 23(A), 23(B), and 23(B)(2) of the Federal Rules of Civil Procedure.  The proposed class consists of all adherents of the traditional District of Columbia Offenders who have been transferred to the Federal Bureau of Prisons pursuant to Section 11231 of the National Capitol Revitalization and Self-Government Improvement Act of 1997, P.L. 105-33, 111 stat. 712, and D.C. Code 24-409; and, who are sentenced to a parole eligibility date.  The class may consist of an estimated 150 persons up to a few thousand formerly District of Columbia Department of Correction inmates who have gone up for parole under the U.S. Federal parole Commission and have been denied parole or who will be going up for parole consideration pursuant to the parole commissions authority..

RECEIVED

MAR 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

The named Plaintiff brings this action under 42 U.S.C. 1983 and this action is a result of Defendants violating his Fifth, Eighth and Fourteenth Amendment rights. Jurisdiction is also conferred on this Court by 28 U.S.C. 1331, 1343(3)(4), 28 U.S.C.. 1367 and D.C.C. Long Arm Statutory, D.C.C. Sec. 13-423(A).

The Plaintiff contends that the allegations and alleged statutory and constitutional violations by the Defendants and their agents, represent the grounds on which the class action certification are so based. These claims concern the denial of parole to the Plaintiff, Samuel L. Byrd, Jr. and all similar situated D.C. Code Offenders who have been denied parole and given "ceremonial reconsideration dates" via the U.S. Parole Commissioners or its' agents. Creating the lack of due process under the Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution, Article 1 Section 9 Clause (3) and Section 10 Clause (1)(Ex Post Facto), to the U.S. Constitution.

Thus, the complaint concerns the Plaintiff's denial of parole and the giving of a five year hit (that could only be called a ceremonial-hit), for the examiner promised at least one more five year hit and a two year hit before the Plaintiff would even be within the parol-able base-point score-range. But, the real problem with the U.S. Parole Commissions five year hit policy is that it is illegal and was never sent to the federal register for its' 30 day comment period. The City Counsel sent the proposed law to the U.S. Congress where it sat for 60 days with no action on it by any congressional persons. D.C. law says that a bill becomes law if Congress fails to act on it within 60 days. The irony here is that the D.C. citizens were cheated out of their right to make comments concerning the five year hit for parole denial, (prior to that, the D.C. Code

2

only allowed D.C. Code offenders to be given the highest hit of 24 months), thus, all five year hits by the U.S. Parole Commission violates the laws of the District of Columbia.

The Ex-Post Facto law of the Constitution allows for use of laws as they were at the time of commitment and under the D.C. Board of Parole to be used as opposed to the newer U.S. Parole Commissions' guidelines, that call for harsher punishment of D.C. Code Offenders being considered for parole. At the time of the Plaintiff's commitment, the sentence for murder in the District of Columbia was a mandatory 20 years to life; Where as today, under the D.C. Code, the murder statute is a mandatory 60 years to life. Dealing with this change seems to be a problem with the Commission's Examiners which cause many more hits for the 20 year to life sentence than are necessary if the old guidelines are applied.

The Commission allows non-commissioners to vote on denial of parole which seem to violate the policy of the Commissioners being the ones who grant or deny parole. The examiners make recommendations that must be agreed upon by another examiner or over ruled by a supervisor examiner. However, four people signed off on the original Plaintiff's hearing summary denial of parole. Plus, the names are not readable and the Commission has refused to clarify who these people are that signed off on the five year hit (set off of parole).

The Commission's S.F. Scores on double counting are totally unfair and unconstitutional and violate due process of law.

The Commission's use of information that can not be verified or proven, to deny

3

parole to D.C. Code offenders is unconstitutional and that is true of the use of juvenile records that can not be verified to give hits to D.c. Code offenders. The Plaintiff requests a declaration of his rights as a D.C. Code Offender being considered for parole via, the Commission, as follows:

(A) Is the U.S. Parole Commission bound by congressional mandate to set the release dates of all old law D.C. Code Offenders? It is our understanding that during the first five years extension period the Commission was supposed to set the release dates for all federal and D.C. Code Offenders under its' supervision; but, this Commission refused to do it at the last minute. Thus, four extensions later and some twenty years have passed and the commission still have not set any dates for either federal of D.C. Code Offenders. Plaintiff contends that the Commission purposefully has refused the said Congressional mandate to give all federal and D.C. Code Offenders dates to end their sentences. On October 12, 1984, Congress eliminated federal parole and set in place provision at Section 235(b) of the Sentencing Reform Act for the transition from a sentencing/punishment system with parole eligibility to one in which the offenders would serve determinate sentences. Thus, the key provision at Section 235(b)(3) required that the Parole Commission, shortly before extinction, set release dates within parole guidelines for prisoners still within its jurisdiction. See, *Lyons v. Mendez,* 303 F.3d 285 (3rd Cir. 2002).

(B) Thus, is the U.S. Parole Commission in violation of the original congressional mandate by not setting the release dates of al federal and D.C. Code Offenders instead of setting denials of parole and reconsideration hearing dates

4

especially for D.C. Code offenders?

(C) Does the Commission have the authority to give you less than one-third of your minimum for "Superior Programming", when the guidelines manual recommend "One-third" of your minimum sentence for the classification of "Superior Programming"? This is said in the Commissions' revised rules and guidelines. Yet, the Commission refused to follow them in the original Plaintiff's cause of action and in many other similarly situated.

(D) Can the Commission create rules, policies and guidelines that violate the Judicial sovereignty of the District of Columbia Government (which passes laws approved by Congress) and the sovereignty of the D.C. Superior Court? That in itself would place the U.S. Parole Commission in the position of being the sentencing Court of authority.

The Plaintiff had examiner Mr. Thomas. Mr. Thomas was well aware that the plaintiff was serving a 20 year to life mandatory sentence, and a 12 year non-mandatory sentence; for a total of 32 years. The 20 year sentence equals 240 months and the 12 years equals 48 months for a total of 288 months. The Defendants waited 30 months before giving the Plaintiff his hearing. Mr. Thomas computed 326 months on the minimum and maximum months to the parole eligibility. Then, adding 326 to the Base Point Guideline Range of 110-140 months, plus 12-26 months under the disciplinary guidelines, then subtracting 6 months for superior programming, thereby giving Plaintiff a total guideline range of 442-486 months to serve to parole eligibility. Mr. Thomas computed Plaintiff's hit range incorrectly. Plaintiff contends that under the U.S.

5

Commissioners' revised parole guidelines, Mr. Thomas was allowed to give up to one-third (1/3rd) of the minimum sentence in months for rehabilitative achievements, such as superior programming. In the case at bar, the Plaintiff should have been given 10 years and 6 months, but only received 6 months which went to the low and high end of my hit range. Thus, under the Ex Post Facto laws, the D.C. Parole Guideline policy was to drop 2 points on the S.F.S. for superior programming. This would make the Plaintiff's S.F.S. of 4 to drop to a 2 and the hit range of 9 would also drop, making any hit very small. In such cases it is the D.C. Code offenders' right under the Ex Post Facto laws to have the laws that were in place at the time used as opposed to having the new U.S. Parole Commissioners Guidelines, which are much harsher than the old laws.

(E) Does subsection 235(b)(3) of the Comprehensive Crime Control Act of 1984 mandate the U.S. Parole Commission to set release dates for all federal and D.C. Code offenders? Thus, is the Commission in violation of this mandate that it have refused to do so for over 23 years? And, should the Commission be in the business of setting reconsideration hearings for persons it has denied parole to?

(F) Thus, the Plaintiff and others similarly situated, seek damages, injunctive relief and declaratory judgments where necessary to enforce their rights to a just and proper parole hearing under the D.C. Code; the Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution; and, the statutory provisions of 42 U.S.C. 1983; 29 U.S.C. 1331, and 1343 (3) and (4); and 28 U.S.C. 1367, D.C. Codes 13-334(a), 13-422 and 13-423, the District of Columbia's long-arm statute.

(G) We believe that the Commission have used arbitrary and capricious means

6

of giving D.C. Code offenders unnecessary parole set offs and hits in order to stay in

business and keep from being abolished by the U.S. Congress. Many D.C. Code

offenders have been given and received set offs on parole without reason or purpose

from a conventional point of view. Many D.C. Code offenders have been given a three

year hit (set off of parole) and at the rehearing, were given either a five year hit or

another three year hit, with no reason or purpose in mind. However, these unnecessary

hits have served the business of keeping the Commission busy and in business. The

Commission is an independent agency of the U.S. Department of Justice. It acts on

behalf of the District of Columbia as a Parole Board for the D.C. Code offenders, who

are still under the old law, D.C. Code laws. It does this via an act of Congress passed

in 1997. The revitalization Act, which gives the Commission control over parole and the

denial of parole to D.C. Code offenders. Thus, the Commissions decisions on D.C.

Code offenders is as stated, "Decision is not Appeal able." Only the Courts and the

U.S. Congressional Judiciary Oversight Committee have any authority over the actions

of the U.S. Parole Commission. However, the Commission is responsible for its'

actions, rules and regulations and policies that does harm to its wards/offenders. It is

also believed that the Commission is sue-able also as an acting-state agency,

especially with the use of supplemental jurisdiction. Thus, the Commission while acting

on behalf of the D.C. Code offenders, acts under the color of D.C. Code law.

   Defendants violations may include infringement of Plaintiffs Fifth, Eighth, and

Fourteenth Amendment rights to due process, including equal protection and freedom

from discrimination on the basis of being a prisoner. The Defendants have violated

7

Plaintiffs rights in various ways, including imposing unjustified restrictions on the opportunity to make parole, and imposing unnecessary delays and set offs of parole for D.C. Code offenders.  The Commission and its examiners have used knowingly miscomputed information to make parole decisions.  The Commission examiners have refused to change or correct facts and information in their files that they know is wrong or in error of a true fact.  The D.C. Code offenders that are going up for re-parole hearings are not given the benefit of their rehabilitational programming.  In fact, the old D.C. Board of Parole around 1987 developed and utilized both pre-incarceration and post-incarceration factors in making parole suitability determinations, whereas, the Commission on many of the D.C. Code offenders that they have taken up for rehearings, has used only two pre-incarceration factors, (as they do for Federal offenders), thus de-emphasizing any rehabilitative results from incarceration.  Thus, these men have been continuously given set off after set off, because the Commissions examiners are using federal guidelines that they have converted for use on D.c. Code offenders.  This is one of the main problems that congress should have considered before appointing the Commission to take responsibility for D.C. Code offenders.  See, *Fletcher v. D.C.,* 391 F.3d 250, 251 (Fletcher II); See also, *Fletcher v. D.C.* , 370 F.3d 1223, 1227 (Fletcher I); 2006 U.S. App. LEXIS 269 No. 03-5359, January 6th, 2006, Decided.

## I.  THE PROPOSED CLASS SATISFIES THE REQUIREMENT OF RULE 23 (a)

The prerequisites of class certification are enumerated in the Fed.R.Civ.P at Rule 23(a), which provides that:

"One or more members of a class may sue...as representative

8

parties on behalf of all only if (1) the class is so numerous that
joinder of all members is impractical, (2) there are questions of
law or fact common to the class, (3) the claims or defenses of the
representative parties are typical of the claims of defenses of the
class, and (4) the representative parties will fairly and adequately
protect the interests of the class."

## A.  THE CLASS IS SO NUMEROUS THAT JOINDER
## OF ALL MEMBERS OF THE CLASS IS IMPRACTICAL

The proposed D.C. Code offenders that have been denied parole by the U.S.

Parole Commission unjustifiable class easily satisfies the first requirement of Rule 23

(a). The class is comprised of an estimated 150 persons or more.  In addition, to the

large number of class members,(See footnote 1), other factors exacerbate the

impracticality of joinder in this case.  See, *Robidoux v. Celani,*  987 F.2d 931 (2nd Cir.

1993)("Determination or practicability [of joinder] depends on all the circumstances

surrounding a case, not mere numbers.")  Most potential members of the proposed

class are indigent and unable to initiate independent actions, a factor properly

considered in determining the impractically of joinder.  See, *Familienstiftung v.*

*Montpellier Resources, Ltd.,* 178 F.R.D. 405, 410 (S.D.N.Y. 1998); See also, *Deposit*

*Guar Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980)("Where it is not economically

feasible to obtain relief within the traditional framework of a multiplicity of small,

---

Footnote 1:  Although "numbers alone are not usually determinative,"Andrews v. Bechtel Power Corp., 780
F.2d 124, 131 (1st Cir. 1985), courts typically find that joinder is impracticable when there are thirty-five, forty,
fifty...class members." &A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
Procedures: Section 1762 at 177-82 (2d ed. 1986). *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998), See also,
*EEOC v. Printing Industry,*  92 F.R.D 51, 53-54 (D.D.C. 1981)(noting that "as few as 25-30 class members
should raise a presumption that joinder is impractible and thus the class should be certified."); *Ardrey v.*
*Federal Kemper Ins. Co.,*  142 F.R.D. 105, 109 (E.D. Pa. 1992)("While the absolute number of the class
members is not the sole determining factor, generally the courts have found the numerosity requirement
fulfilled where the class exceeds 100.")(quoting *Fox v. Prudent Resources Trust,* 69 F.R.D. 74, 78 (E.D. Pa.
1975).

individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.")

Additionally, the "fluid composition" of a prison population adds an element of instability and unpredictability to the Plaintiffs class that eliminates any possibility of joinder. While this action is pending, some members of the Plaintiffs class will be released and others will remain incarcerated. In addition, Defendants may at any time transfer any particular prisoner to another facility, even out of state. This Court has already recognized the propriety of certifying a class that will include those who will be confined at a prison in the future. *Inmates of Occoquan v. Barry,* 650 F.Supp. 619 (D.D.C. 1986)(describing the previously certified class as "all persons, present and future, confined to Occoquan facility..."), vacated on other grounds at 844 F.2d 828 (D.C. Cir. 1988) See also, *Robbins v. Kleindienst,* 383 F.Supp. 239, 241(D.D.C. 1974) (explaining that "[e]ven though certain named representatives are no longer incarcerated, they still may represent the class.") See Footnote 2.

## B. THERE ARE QUESTIONS OF BOTH LAW AND FACT COMMON TO THE CLASS

The putative class class also satisfies the "commonality" prerequisite of Rule 23 (a)(2). That prerequisite requires only the existence of a single question of law or fact common to the class. *In re The Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.2d 283, 310 (3rd Cir. 1998), , "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." common nuclei of fact are

Footnote 2:   Plaintiffs are not required to specify the exact number of persons in the class. *Tylka v. Gerber Prods. Co.* 178 F.R.D. 493, 499 (N.D. Ill. 1998), *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989).

10

of fact are typically manifest where...defendants have engaged in standardized conduct

towards the members of the proposed class. 963 F.2d 1013, 1018 (7th Cir. 1992)

(citations omitted). See also, *Franklin v. Barry,* 909 F.Supp. 21, 30 (D.D.C. 1995)

(holding that Rule 23(a)(2) "does not require commonality on each fact or every issue.");

1 Herbert Newberg & Alba Conte, Newberg on Class Actions Section 3/10, at 3-51 (2d

ed. 1992)("Where the party opposing the class has engaged in some course of conduct

that affects a group of persons and gives rise to a cause of action, one or more of the

elements of that cause of action will be common to all of the persons affected.")

Here, virtually all questions of fact and law are common to the putative class

members. As D.C. Code offenders in the U.S. Bureau of Prisons and under the

authority of the U.S. Parole Commission, of which both Federal and D.C. Code

offenders are subjected. However, all class members are subject to the same

Commissions interpretations in the Federal institutions and they all have treatment

problems in common to the class with respect to the opportunity to make parole and be

given the same kind of inequitable set offs and hits on parole considerations. The

Defendants infringements on the D.C. Code offenders rights under the Fifth, Eighth and

Fourteenth Amendments, and the Ex post facto clause and congressional laws apply to

each individual in the same way they apply to the class as a whole.

## C.  PLAINTIFFS' CLAIMS ARE TYPICAL
## OF THE CLAIMS OF THE CLASS

The named Plaintiffs satisfy the third requirement of Rule 23 (a) as the

claims are typical of the claims of the class. "As long as the claims [of the class]

'resemble or exhibit the essential characteristics of those of the representatives,' Rule

11

23(a)(3) will be satisfied." *Vargas v. Meese,* 119 F.R.D. 291, 295 (D.D.C. 1987)

(quoting *Kas v. Financial Gen. Bankshares Inc.,* 105 F.R.D. 460, 461(D.D.C. 1984);

*Thomas v. Christopher,* 169 F.R.D. 224, 238 (D.D.C. 1998)("As with requirement of

commonality, the facts and claims of each class member do not have to be identical to

support a finding of typicality.") See also, *Robbins,* 383 F.Supp at 241. The typicality

requirement is designed to ensure that the interests of the class and the named

Plaintiffs are aligned. *In re The Prudential Ins. Co. of Am. Sales Prectices Litig.,* 148

F.3d at 311. In fact, the facts that support commonality tend also to support typicality.

Id. Very simply, in this case, there is no difference between the complaints of the

Plaintiff and that of the class. The identical nature of the complaints in the present case

strongly support a finding of typicality as well as commonality.

## D. PLAINTIFF WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS

To be an adequate representative, the named Plaintiff "must not have

antagonistic or conflicting interests with the unnamed members of the class" and "must

appear able to vigorously prosecute the interests of [the] class through qualified

counsel." *National Ass'n for Mental Health Inc., v. Califano,* 717 F.2d 1451, 1456

(D.d.C. 1983). The Plaintiff, Samuel L. Byrd, and other similarly situated inmates were

and are domiciled at U.S.P. Big Sandy, which is a facility within the U.S. Federal

Bureau of Prisons; and, is located at P.O. Box 2067, Inez, Kentucky. The named

Plaintiff was denied parole by the Commission and given unreasonable set offs by the

Commission, nor were any presumptive dates set of his parole date in accordance

with the instructions of Congress. Double-counting were used in all of the parole

12

consideration hearings where the salient factor scores were used.  They all suffered from the Defendants' restrictions on the D.C.Code offenders parole guidelines which were hardened under the treatment by the Commission.  Each have filed a pro se class action complaint in this Court because claim-class members and named claim-class members share equally in the claims raised and remedies sought,  Plaintiffs' interest are not antagonistic to those of the other class members.  The Plaintiffs seek damages, declaratory and injunctive relief, which will insure equally to all class members.  The Plaintiffs representative class seek no special considerations and will not profit from their representational efforts.

The Plaintiffs does request the Appointment of Pro Bono counsel for the adequacy of Plaintiffs representation of the class is enhanced by the commitment and experience of Plaintiffs counsel(s).  The Pro Bono Counsel appointed should  be and have significant litigating and class action experience and the resources necessary to assure that class members will be provided with all reasonable assistance in pressing their claims efficiently and effectively.

## II. THE REQUIREMENTS OF RULE 23(b) ARE SATISFIED

Thus, in addition to meeting all four of the conditions enumerated in Rule 23(a), a class must fit into at least one of the categories described in Rule 23(b).  The categories are not mutually exclusive and a class may fit into and appropriately be certified under more than one provision of Rule 23(b). *Eubanks v. Billington,* 110 F.3d 87, 91 (D.C. Cir. 1997) ("The three categories are not mutually exclusive, and a class may be certified under more than one category.")  See, e.g., *Women  Prisoners*

13

*of the District of Columbia Department of Corrections v. District of Columbia,* 877
F.Supp. 634, 638 (D.D.C. 1994)(explaining class certified under Rule 23(b)(1) and 23(b)
(2), vacated and modified in part on other grounds (citations omitted).See also,
*National Treasury Employees Union v. Reagan,* Civ. Act. No. 81-0198, 81-0284, 1988
WL 33028, at *1(D.D.C. March 24, 2988)(same).

    The categories differ in relation to the characteristics of the members of the class
and the nature of the remedy the class seeks. In particular, classes certified pursuant
to the provisions of Rule 23(b)(1) and (2) must demonstrate a cohesiveness of
circumstances, situation, and interests among class members not required of a class
certified under Rule 23(b)((3), which permits potential class members to opt out of the
class. *Eubanks v. Billington,* 110 F.3d at 96 (citing, *Holmes v. Continental Can Co. ,*
706 F.2d 1144, 1154-60(11th Cir. 1983); *Thomas v. Albright,* 139 F.3d 227, 234 (D.C.
Cir. 1998). where the requisite cohesiveness is demonstrated, a 23(b)(1) or (2) class is
preferred to a 23 (b)(3) class. *Stewart v. Rubin,* 948 F.Supp. 1077, 1092-93 (D.D.C.
1996) (explaining that policy favors a mandatory class over an opt out for class
members where there is a common claim susceptible to a single proof and a single
injunctive remedy, aff'd 124 F.3d 1309)(1997). See also Newberg on Class Actions
Section 4.20, 4-71-75. The proposed D.C. Code Offenders whom have been denied
parole under the Commissions' harsher rules class is notably cohesive, and meets all
the other requirements of the Rule 23(b)(1) and (2). The relevant part of the rule states:
"(1) the prosecution of separate actions by or against individual members of the class
would create a risk of (A) inconsistent or varying adjudications with respect to individual

14

members of the class which would establish incompatible standards of conduct for the

party opposing the class, or (B) adjudication with respect to individual members of the

class which would as a practical matter be dispositive of the interest of the other

members not parties to the adjudications or substantially impair or impede their ability to

protect their interests; or (2) the party opposing the class has acted or refused to act on

grounds generally applicable to the class, thereby making appropriate final injunctive

relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. Rules 23(b)(1) and (2).   Accordingly, Plaintiffs seek certification of the

proposed class pursuant to any one or any combination of these categories identified in

Rule 23(b)(1) and (2).

## B.  THE CLASS QUALIFIES FOR CERTIFICATION
## UNDER FED.R.CIV.P. RULE 23 (b)(1) AND (2)

A class may be certified under Rule 23 (b)(1)(A) if "the prosecution of separate

actions by or against individual members of the class would create a risk of inconsistent

or varying adjudications with respect to individual members of the class which would

establish incompatible standards of conduct for the party opposing the class."

Fed.R.Civ.P. 23 (b)(1)(A).  The proposed D.C. Code offender-prisoners is aparadigm of

a Rule 23(b)(1)(A) class.  It seeks both injunctive and monetary damages and

challenged practices and conduct of Defendants who are required by law to deal with all

class members in the same manner, rules, regulations and policy.  See, 1 Newberg on

Class Actions Section 4.08 at 4-26 (describing practical candidates for Rule 23 (b)(1)(a)

classes).  Rule 23(b)(1(A) does not require that the class be limited to a certain kind of

relief, but will accommodate those seeking either exclusively or predominately

15

monetary damages or equitable relief, or any combination thereof. And where, as here, the request for monetary relief does not erode the underlying premise that class members suffer from a common injury properly addressed by class-wide relief, it is compatible with the categories countenance by Rule 23(b)(1). See, *Allison v. Citgo Petroleum Corp,* 151 F.3d 400, 412-13 (5th Cir. 1998) Certification of the proposed D.C. Code offender-prisoner Class under Rule 23 (b)(1)(A) is appropriate.

## C. THE CLASS QUALIFIES FOR CERTIFICATION UNDER FED.R.CIV.P. RULE 23(b)(1)(B)

A class that fits the category described in Rule 23(b)(1)(A) often also fits the category described in Rule 23 (b)(1)(B). 1 Newberg on Class Action, Section 4.08 at 4-27. The proposed D.C. Code-Prisoner class is such a class. It is obvious that a judicial decision addressing whether the Constitution or Civil Rights Act prohibits certain actions or requires certain other actions by prison officials toward one prisoner, but not against another "would as a practical matter be dispositive of the interests" of all the D.c. Code offender-prisoners in that said situation. However, parole guideline-freedoms are not something representatives of the governments may observe in varying degrees between individual prisoners who are similarly situated. Thus, certification of the proposed D.C. Code offender-prisoner class under Rule 23(b)(1)(A) is appropriate.

## D. THE CLASS QUALIFIES FOR CERTIFICATION UNDER FED.R.CIV.P. RULE 23 (b)(2)

Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class," [thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Fed.R.Civ.P. Rule 23 (b)(2).] civil rights cases against parties charged with unlawful, class-based discrimination are prime examples.

16

See, *Amchem Prods., Inc., v. Windsor,* 117 S.Ct. 2231, 2245 (1997) (quoting

Fed.R.Civ.P. 23(b)(2).)  Courts have interpreted the requirement of Rule 23(b)(2) to

mean that the party "either has acted in a consistent manner toward members of the

class so that his actions may be viewed as part of a pattern of activity, or has

established or acted pursuant to a regulatory scheme common to all class members."

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

Procedure Civil Section 1775 at 449 (2nd ed. 1986).  There can be no doubt that

defendants in this action have acted pursuant to a regulatory scheme common to all

class members.  Where a full-blown regulatory scheme has not governed defendants'

conduct towards Plaintiffs, defendants' conduct has nonetheless been consistent with

respect to all members of the putative class.  Defendants' conduct with respect to

permitting double-counting; refusing to acknowledge the D.C. Codes Ex Post Facto

violations; refusing to give D.C. Code offenders a date to go home after their extensions

when and while Congress has abolished the Federal and District of Columbia Parole

Systems; to name just a few examples, is conduct that does not vary between individual

class members for they all suffer this and many more discriminations.

Certification under Rule 23(b)(2) is permissible only if the primary relief sought is

injunctive or declaratory.  The requirement that injunctive relief predominate does not

preclude the award of monetary relief on a class-wide basis when monetary relief is

secondary or ancillary to the predominant injunctive relief. *Eubanks v. Billington,* 110

F.3d at 92 ("Courts have generally permitted (b)(2) classes to recover monetary relief in

addition to declaratory or injunctive relief, at least where the monetary relief does not

17

predominate."); *Thomas v. Christopher,* 169 F.R.d. at 239 (certifying a class seeking both damages and injunctive relief under 23(b)(2) and noting that the parties submitted that, "in cases where monetary relief is sought, certification under Rule 23 (b)(2) is precluded only if the final relief sought relates "exclusively or predominately to money damages")(quoting Fed.R.Civ.P. Rule 23 Advisory Committee Note); 1 Newberg on Class Actions Section 4.12 at 4-43.

Moreover, the size of the monetary damages sought or awarded does not necessarily determine their predominance. Even where the money damages sought are very large, they may nonetheless be secondary or ancillary to the injunctive remedy sought, and thus certifiable as a Rule 23(b)(2) class. See, e.g., *Stewart v. Rubin,* 948 F.Supp. at 1092 (explaining that "far-reaching equitable measures...far outweigh" the class compensatory damage award of $4 million for the whole, or an average individual award of $16,500, aff'd 1245 F.3d 1309(1997); *Thomas v. Christopher,* 169 F.R. D. at 241 (determining that injunctive relief was predominate in action where class certified under Rule 23 (b)(2) received $3.8 million in damages.

Thus, the monetary relief sought here is secondary to the injunctive relief sought. The money damages will accrue only to class members, whereas the injunctive relief will inure to many persons who will be governed by the policy corrections of the Commission and its' individual employees. In short, the injunctive and declaratory relief will have a far broader and more lasting reach and effect that the monetary damages for the few hundred individual class members. This class qualifies for certification pursuant to Rule 23(b)(2).

18

## CONCLUSION

Class certification is necessary to ensure that Plaintiff's constitutional, statutory and D.C. Coded legislative rights are protected and properly enforced. class action is not only an appropriate procedure vehicle for resolving the Plaintiff's claims and of the class members, it is the only reasonable one. Without class certification, this Court cannot ensure that the constitutional rights will be vindicated. The problems would be insurmountable. The judicial and legal resources to litigate individual cases would be immense, the waste comensurate and very unnecessary. The risk of conflicting adjudications if in fact there were individual adjudications would be so enormous. In reality, to prosecute is virtually non existant, leaving most if not all vulnerable to abuse like the Plaintiff in this action has cited in his original and amended complaints, without legal redress. Finally, that temporary nature of each D.C. Code Offenders status as a resident of the 105 facilities  in the U.S. Bureau of Prisons would always threaten to render moot the ultimate vindication of any individuals claims. for all these reasons, Plaintiff requests that this most Honorable Court grant his motion for "Class Certification."

Respectfully submitted,

Samuel L. Byrd, Jr. Class Representative
Reg. No. 020126-016
D.C.D.C. No. 169-421

## CERTIFICATE OF SERVICE

I, Samuel L. Byrd, Jr. hereby certify that a true and correct copy of the foregoing,

Plaintiff's Memorandum of Points and Authority in Support of His Motion for Class

Certification Pursuant to Fed.R.Civ.P. Rule 23, was mailed postage pre-paid to:  U.S.

Attorney Office, Judiciary Center, 555 Fourth Street, N.W. Washington, D.C. 20001 on

this____8 th____day of __March__, 2007.

The above is affirmed by the undersigned under penalty of perjury in accordance

with 28 U.S.C. 1746.

Samuel L. Byrd, Jr.
Reg. No. 02016-016
U.S. Penitentiary Big Sandy
P.O. Box 2068
Inez, KY 41224